UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.: 05-193(ESH) |
| | : | |
| ANTHONY WEDGE, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States, by and through its attorney, Kenneth L. Wainstein, the United States Attorney for the District of Columbia, hereby submits its opposition to defendant's Motion to Suppress Evidence. In support of this pleading, the government makes the following representations:

FACTUAL BACKGROUND

The defendant is charged by indictment with one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, U.S.C. section 922(g)(1). This stems from an event that happened on April 25, 2005, at approximately 3:56pm at 914 Barnaby Street, SE, Washington, DC. Officers of the Metropolitan Police Department (hereinafter MPD) were flagged down by a witness who indicated that the defendant had a gun. The witness pointed out the defendant, who was walking away quickly down Barnaby Street toward Wheeler Road, SE. Officers investigated by following and observing the defendant as he attempted to gain access to approximately 3 different locked apartment buildings. When the officers were about 15 to 20 feet away from the defendant, he turned and faced them, reached into the front of the waistband of his jeans, pulled out a black handgun and tossed it approximately 5 feet away while yelling words to the effect of "I ain't did a mother fucking thing." The weapon landed in an area against the building, and the defendant was immediately placed under arrest. Subsequent investigation revealed that the weapon was a black Smith and

Wesson semi-automatic handgun containing a silver weapon magazine, which was loaded with 10 bullet cartridges.

## ARGUMENT

### 1. Defendant has no standing to contest the recovery of the physical evidence

As a threshold matter, the government notes that the right to object to searches and seizures is personal, and can be invoked only at the instance of one whose rights were allegedly infringed by the challenged search and seizure. United States v. Salvucci, 448 U.S. 83 (1980). It is axiomatic that a defendant may claim the benefits of the exclusionary rule only if his or her own constitutional rights have been violated; he or she cannot vicariously assert the rights of others. Rakas v. Illinois, 439 U.S. 128, 134 (1978). In Rakas, the Supreme Court held that the defendant, a mere passenger in the car, lacked standing to challenge the admissibility of the evidence seized because he had no reasonable expectation of privacy in the area searched. Here, the gun was recovered from an area against the building where the defendant was standing, on a public street. The defendant has no expectation of privacy in so public an area, and his motion to suppress should be denied.

Moreover, "When an individual abandons property," however, "he forfeits any reasonable expectation of privacy in it; consequently, police may search it without a warrant." United States v. Lewis, 287 U.S. App. D.C. 306, 314, 921 F.2d 1294, 1302 (1990); see also United States v. Boswell, 347 A.2d 270, 274 (D.C. 1975) (issue is whether defendant had voluntarily discarded or relinquished his property interest in the seized item and could no longer retain a reasonable expectation of privacy in the item at the time of the search); Smith v. United States, 292 A.2d 150, 151 n.4 (D.C. 1972). It is well-established that a warrantless search or seizure of abandoned property does not violate the Fourth Amendment. Abel v. United States, 362 U.S. 217, 241 (1960). "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy in it at the time of the search."United States v. Boswell, 347 A.2d 270, 274 (D.C. 1975). "[T]he key inquiry is whether [the defendant] manifested an expectation of privacy that society recognizes as reasonable."Mills v. United States, 708 A.2d 1003, 1007 (D.C. 1996) (citation and quotation omitted). This test has two

components: first, the subjective test of whether "the defendant exhibit[ed] an expectation of privacy in the place or item searched, that is, did he seek to preserve something as private"; and second, the objective test of whether "society generally recognize[s] defendant's expectation of privacy as reasonable, that is, is his expectation of privacy justifiable under the circumstances." Mills, 708 A.2d at 1007-1008. Appellant demonstrated neither a subjective nor an objective expectation of privacy when he removed a gun from his waistband and threw it into the area against the building in full view of members of the MPD. Moreover, the defendant has failed to proffer any facts which would support an argument that his abandonment of the drugs was caused by any illegal police conduct, specifically by an improper stop or arrest. See Williams v. United States, 99 U.S. App. D.C. 161, 237 F.2d 789 (1956). The defendant, who dropped the contraband before being confronted by the police, had not been seized within the meaning of the Fourth Amendment prior to the time he abandoned the contraband. See California v. Hodari D., 111 S. Ct. 1547 (1991). Unlike the scenario where the alleged illegality occurs prior to the abandonment of contraband, the defendant could only argue in this case that he was coerced into discarding the property by the "purely hypothetical" prospect of an illegal arrest. This is no basis for exclusion. "It is clear in this jurisdiction that where incriminating evidence is discarded in a public area in anticipation of a police investigation, the fourth amendment does not set limits on its recovery by the police, even where what is exposed to public view is not itself evidence of a crime." Smith v. United States, 292 A.2d at 151 n.4.; see also United States v. Speed, 388 A.2d 892 (D.C. 1978). Consequently, when the officer retrieved the loaded handgun abandoned by the defendant, there was no seizure in the Fourth Amendment sense, and the defendant's motion to suppress that evidence must be denied.

**2. The stop of the defendant was based on reasonable suspicion.**

Terry v. Ohio, 392 U.S. 1 (1968) permits police officers to temporarily "seize" a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, which require swift action because of observations the officer has made. Id. at 20. The officer may briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30. The officer need not be certain that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and

requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Thus, a Terry stop may be conducted simply "on the need to 'check out' a reasonable suspicion."  United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances.  Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner. United States v. Sokolow, 490 U.S. 1, 8-9 (1989).  "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may."  United States v. Edmonds, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

In the instant case, the officers were flagged down by a citizen who was excited yelling words that indicated that the defendant had a gun.  Moreover, the citizen also pointed the defendant out to the officers.  Finally, when the officers saw the defendant, he first walked away very quickly, then participated in evasive maneuvers such as trying to go into locked buildings and courtyards in an effort to avoid them.

The Supreme Court has held that flight from the police goes a very long way to establishing reasonable articulable suspicion for a Terry stop.  In Illinois v. Wardlow, the Court found reasonable articulable suspicion where the defendant was present in a high narcotics-trafficking area, and he fled from the police.  528 U.S. 119, 124-25 (2000) ("it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police.").  Based on those two factors alone, the Court found that reasonable articulable suspicion had been established for a Terry stop.

Here, the officers had even greater substantiation that "criminal activity was afoot," justifying a Terry stop.   They had received information that the defendant had a weapon from a known, live citizen who had flagged them down in an excited manner, and was standing before them, pointing out an individual who had a gun. Consequently, the officers had reason to suspect that the defendant was in fact armed, and were justified in pursuing and stopping him to investigate.

WHEREFORE, for these reasons, and any others that may appear to the Court should there be a hearing on this matter, the government requests that the defendant's Motion to Suppress Evidence be denied.

                                            KENNETH L. WAINSTEIN.
                                            UNITED STATES ATTORNEY

By:   _____
        WANDA J. DIXON
       Assistant United States Attorney
       Organized Crime and Narcotics Trafficking Section
       555 Fourth Street, N.W., Room 4235
       Washington, D.C. 20530
       202/514-6997