UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.: 05-193(ESH) |
| | : | |
| ANTHONY WEDGE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE TO EXCLUDE STATEMENTS AND
EVIDENCE OF OTHER CRIMES MADE AT THE SCENE BY YOLANDA LEFTWICH**

The United States, by and through its attorney, Kenneth L. Wainstein, the United States Attorney for the District of Columbia, hereby submits its opposition to defendant's Motion in limine to exclude statements. In support of this pleading, the government makes the following representations:

**FACTUAL BACKGROUND**

The defendant is charged by indictment with one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, U.S.C. section 922(g)(1). This stems from an event that happened on April 25, 2005, at approximately 3:56pm at 914 Barnaby Street, SE, Washington, DC. Officers of the Metropolitan Police Department (hereinafter MPD) were flagged down by a witness who indicated that the defendant had a gun. The witness pointed out the defendant, who was walking away quickly down Barnaby Street toward Wheeler Road, SE. Officers investigated by following and observing the defendant as he attempted to gain access to approximately 3 different locked apartment buildings. When the officers were about 15 to 20 feet away from the defendant, he turned and faced them, reached into the front of the waistband of his jeans, pulled out a black handgun and tossed it approximately 5 feet away while yelling words to the effect of "I ain't did a mother fucking thing." The weapon landed in an area against the building, and the defendant was immediately placed under arrest. Subsequent investigation revealed that the weapon was a black Smith and

Wesson semi-automatic handgun containing a silver weapon magazine, which was loaded with 10 bullet cartridges. After the defendant's arrest, the witness was interviewed further. It was determined that the name of the witness was Yolanda Leftwich, and that she and the defendant had been inside of 800 Southern Avenue, SE, #421, involved in an argument. During the argument, the defendant had grabbed her by the shirt, and pushed her into the bathroom wall. Defendant then left the apartment, and the argument continued out into the hallway, and outside in front of the building. Ms. Leftwich followed the defendant, and when they were near 9th and Barnaby Street, SE, continuing to argue, the defendant turned to her, lifted up his shirt, displayed a black handgun tucked into the front of his jeans, and yelled "suck my dick." The defendant continued to walk away, and the witness flagged down the police to report the event.

## ARGUMENT

**1. The statements made by Ms. Leftwich can be received into evidence under several exceptions to the prohibition against hearsay evidence, including excited utterances, identification evidence, and non hearsay.**

Federal Rule of Evidence 803 (2) excludes excited utterances from the prohibition against hearsay evidence. There are three prerequisites to the admission of a statement under the excited utterance exception: 1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant; 2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated it; and 3) the presence of circumstances which in their totality suggest spontaneity and sincerity of the remark. <u>Nicholson v. United States</u>, 368 A.2d 561, 564 (D.C. 1977). Here, Ms. Leftwich's statements fit the criteria. The first criteria - the serious event which would cause the nervous excitement on her part would be her verbal and physical altercation with the defendant, coupled with her having just seen him in possession of a weapon. The second criteria is satisfied, because her physical and verbal altercation with the defendant was ongoing–in fact, she flagged down the police shortly after the defendant displayed the gun and made a comment about his anatomy. Finally, the third criteria is satisfied because the act of flagging down the police right after that exchange of words is clearly indicative of spontaneity and sincerity. Consequently, since this

statement satisfies the requirements of Rule 803 (2), it qualifies as an excited utterance, and should not be excluded.

However, the statement can also be evaluated and admitted to evidence without regard to the prohibition against hearsay, because it involves an identification. See Federal Rule of Evidence 801(d)(1)(C). Here, after flagging down the officer and realizing that the defendant was still on the scene, Ms. Leftwich then stated and indicated that this was the person who was in possession of a gun. After the defendant was arrested, she explained that he was the person whom she had recently seen with a gun. Since that was an identification of the defendant, it is specifically excluded from the hearsay prohibition.

Finally, when admitted to explain the totality of the police conduct in this case, Ms. Leftwich's statements are not hearsay. Hearsay is defined as an out-of-court statement offered into evidence to prove the truth of the matter asserted. See Federal Rule of Evidence 801(c). In this situation, the initial statement made by Ms. Leftwich to the police provided basis for them to turn their attention to the defendant and his behavior. Had she said nothing to them about him, there is no reason to believe that he had otherwise brought himself within their purview. In that situation, the truth of the statement would be immaterial–even if the witness had said to the police "I have reason to think that his person has a weapon," or "I think this person may have a weapon," under certain circumstances that could give the police articulable suspicion to stop the defendant and investigate further. Since the statement made by Ms. Leftwich could be used to explain why the police were investigating the defendant, it is not hearsay, and should not be prohibited by the rule.

**2.   Ms. Leftwich's statements can be admitted into evidence because they are inexplicably intertwined with the events which brought the defendant to the attention of the police, and which resulted in his ultimate arrest.**

An analysis of this case reveals that it has its origin in a domestic dispute that occurred between the defendant and Ms. Leftwich. It is clear from a review of her testimony in the transcript of the preliminary hearing that she was angry with the defendant, and that she was the person who flagged the police down, and that she told them certain things, in her words, "to scare Mr. Wedge because we had been fighting and I was angry." See Preliminary Hearing Transcript, page 29, line

10.  The various things she did and said constitute the entirety of the event which resulted in the defendant's arrest, and as such, would properly be admitted into evidence in order to explain the case, and to put the situation between the defendant and Ms. Leftwich into the proper context so that the fact finder can understand what transpired.  "Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'"  United States v. Allen, 960 F.2d 1055, 1058 (D.C. Cir.), cert. denied, 506 U.S. 881 (1992) (affirming admission of evidence that defendant had "watched" crack sale moments before crack was seized from his house); see also United States v. Gartmon, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (evidence that defendant charged with fraud had threatened a coconspirator not "other crimes evidence" but instead "inextricably intertwined" with charged offense); United States v. Graces, 133 F.3d 70, 77 (D.C. Cir. 1998) (holding that evidence that "was part of the story" was not other crimes evidence); Fed. R. Evid. 404(b), Advisory Comm. Note  regarding 1991 Amendment ("The amendment does not extend to evidence of acts which are 'intrinsic' to the charged offense [citation omitted].").  Here, Ms. Leftwich's statements are relevant and probative regarding the charged offenses, and should not be excluded.

    WHEREFORE, for these reasons, and any others that may appear to the Court should there be a hearing on this matter, the government requests that the defendant's Motion to Suppress Evidence be denied.

                KENNETH L. WAINSTEIN.
                UNITED STATES ATTORNEY

By: _____
  WANDA J. DIXON
Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section
555 Fourth Street, N.W., Room 4235
Washington, D.C. 20530
202/514-6997